UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CAR-FRESHNER CORPORATION,
and JULIUS SÄMANN LTD.,

                                        Plaintiffs,
        v.                                                      7:15-CV-1463

SUN CEDAR, INC.,

                                        Defendant.
_____

THOMAS J. McAVOY,
Senior United States District Judge


                        DECISION & ORDER

I.      INTRODUCTION

        Plaintiffs CAR-FRESHNER Corporation ("CFC") and Julius Sämann Ltd. ("JSL")

(collectively, "Plaintiffs") commenced this action asserting claims sounding in violations

of (1) Lanham Act § 32, 15 U.S.C. § 1114 (infringement of a registered trademark); (2)

Lanham Act § 43(a)(1)(A), 15 U.S.C. § 1125(a)(1)(A) (infringement of common law

trademark); (3) Lanham Act § 43(a)(1)(c) , 15 U.S.C. § 1125(a)(1)(c) (dilution of a

famous trademark); (4) N.Y. Gen. Bus. Law § 360-1 (state law dilution); and (5) New

York state common law (unfair competition).  Compl. dkt. # 1.

        Defendant Sun Cedar, Inc. ("Sun Cedar" or "Defendant") moves to dismiss the

action pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, to transfer the action to

the District of Kansas  pursuant to 28 U.S.C. § 1404(a). Dkt. # 8.  For the reasons that

follow, the motion is denied.

1

## II.    BACKGROUND[1]

For over sixty years, Plaintiffs have used trademarks comprising or containing a distinctive abstract tree design (the "Tree Design Marks") in connection with various products and services, including its famous air fresheners sold under the LITTLE TREES brand ("LITTLE TREES Air Fresheners").  Compl. ¶¶ 2, 8-10.  Among many other uses, the Tree Design Marks appear on the packaging for Plaintiffs' products, in various forms of advertising and promotions for Plaintiffs and their products, throughout websites operated by Plaintiffs, and as the shape of the LITTLE TREES Air Fresheners. *Id.* ¶ 10.  Plaintiffs' Tree Design Marks and LITTLE TREES Air Fresheners have become staples of American commerce, familiar to millions of consumers who encounter these products and marks in a variety of contexts. *Id.* ¶ 11.

In addition to the LITTLE TREES Air Fresheners, Plaintiffs have used the Tree Design Marks in connection with other goods and services, including t-shirts. *Id.* ¶ 12. Many of Plaintiffs' products bearing the Tree Design Marks are marketed for use and are used by consumers in automobiles and in a hanging manner. *Id.* ¶ 13. Because of the fame and public recognition of the Tree Design Marks, Plaintiffs have licensed the Tree Design Marks to several third parties for various goods and services. *Id.* ¶ 16.

As a result of this widespread and longstanding use and promotion of the Tree Design Marks and the products they designate, Plaintiffs' products sold in connection with those marks have been a commercial success and have acquired significant

---

[1]For the purposes of this motion, the factual allegations in the Complaint are assumed to be true. *See Fahs Constr. Group, Inc. v. Gray*, 2011 U.S. Dist. LEXIS 7822, at *5-6 (N.D.N.Y. Jan. 27, 2011).

goodwill and secondary meaning among the consuming public, which recognizes the Tree Design Marks as exclusively associated with Plaintiffs. *Id.* ¶¶ 17-19, 24-25.

JSL owns numerous federal trademark registrations for the Tree Design Marks, many of which are incontestable, including:

| Mark | Registration No. | Registration Date | Goods/Services |
|---|---|---|---|
|  | 1,781,016 | July 13, 1993 | Air freshener, in Class 5 |
|  | 1,791,233 | September 7, 1993 | Air freshener, in Class 5 |
|  | 4,096,100 | February 7, 2012 | Air fresheners, in Class 5 |

*Id.* ¶¶ 21-23.

Defendant manufactures, markets, promotes, advertises, distributes and sells abstract tree shaped air fresheners (referred to the Complaint as the "Infringing Air

Fresheners") in a design that mimics and is nearly identical to Plaintiffs' registered Tree Design Marks and the source-identifying appearance of the LITTLE TREES Air Fresheners (referred to in the Complaint as the "Infringing Tree Design"), including:






*Id*. ¶¶ 26, 38.   Defendant's Infringing Air Fresheners are pre-scented and are intended to be hung, including in automobiles. *Id*. ¶¶ 27, 38.  Defendant, its consumers, and the media have referred to the Infringing Air Fresheners as "air fresheners." *Id*. ¶ 28. Defendant also sells t-shirts (referred to in the Complaint as the "Infringing T-Shirts")

4

bearing the Infringing Tree Design:



(collectively, with the Infringing Air Fresheners, referred to in the Complaint as the "Infringing Goods"). *Id*. ¶ 29.

Defendant is using the Infringing Tree Design as a trademark to indicate the source of the Infringing Goods as well as other goods and services offered, marketed, promoted, advertised and sold by Defendant. *Id*. ¶ 30. The Infringing Tree Design surrounds nearly every aspect and is the most prominent feature of Defendant's marketing and promotion of its goods and services. *Id.* ¶ 31. By way of example, Defendant uses the Infringing Tree Design as its primary profile picture on its Twitter, Instagram and Facebook accounts:

Twitter



## Instagram



## Facebook



*Id.* ¶ 32.  The Infringing Tree Design and Infringing Air Freshener are the primary focus in the above-the-fold portion of the home page of Defendant's website and Defendant also uses the Infringing Tree Design in point-of-sale ("POS") displays for its Infringing Air Fresheners:





*Id.* ¶ 33-34.

Defendant frequently and prominently uses the Infringing Tree Design without other terms and words, such as for its Twitter and Instagram profile pictures and POS displays. *Id.*  Defendant also uses the Infringing Tree Design without other terms and words in connection with advertising employment opportunities at the company, including via Facebook:



*Id.* ¶ 36.  Plaintiffs assert that consumers generally are not familiar with the name "Sun Cedar" and would attribute no source indicative meaning to Defendant's use of the script "Sun" on its Infringing Air Fresheners.  *Id.* ¶ 37.  Defendant markets and promotes its Infringing Air Fresheners to be used in automobiles:

 

*Id*. ¶ 38.

Defendant adopted the Infringing Tree Design for its Infringing Air Fresheners to be a substitute for and direct competitor with Plaintiffs' famous hanging air freshener products. *Id.* ¶ 47.  Defendant's founder, Shine Adams, admitted in a radio interview that he conceived of his tree-shaped Infringing Air Fresheners after he "had just bought a car and I really wanted something to hang from the rearview mirror, but didn't want to hang a piece of cardboard that was scented," referring to Plaintiffs' Tree Design Marks and LITTLE TREES Air Fresheners. *Id.*  Defendant was aware of Plaintiffs' Tree Design Marks and LITTLE TREES Air Fresheners, and the fame thereof, prior to the time Defendant adopted its Infringing Tree Design, but nevertheless recklessly disregarded Plaintiffs' rights. *Id.* ¶ 48.

Defendant adopted the Infringing Tree Design with the intent to cause consumer

confusion and to usurp Plaintiffs' goodwill in their marks. *Id*. ¶ 46. Plaintiffs notified

Defendant on multiple occasions of their rights in the Tree Design Marks and

Defendant's violation of those rights, but Defendant has willfully disregarded those

rights and continued to use the Infringing Tree Design. *Id*. ¶ 48. Plaintiffs have not

given permission to Defendant to manufacture, market, promote, advertise, distribute or

sell the Infringing Goods or utilize the Infringing Tree Design or Plaintiffs' Tree Design

Marks in any manner. *Id*. ¶ 40.

Plaintiffs assert that based on Defendant's alleged intentional violation of

Plaintiffs' trademark rights, they filed the instant suit for trademark infringement, false

designations of origin, trademark dilution and unfair competition under the Lanham Act,

15 U.S.C. § 1051 *et seq*., and corresponding state law.

In response, Defendant Sun argues that it makes descriptive fair use of a tree

shape, which it asserts is a complete defense against all federal causes of action and,

because New York unfair competition law tracks federal law, a complete defense

against the state law claims as well. In the alternative to dismissal, Defendant argues

that the matter should be transferred to the District of Kansas pursuant to 28 U.S.C. §

1404(a).

## III. STANDARDS OF REVIEW

### a. Rule 12(b)(6) motion to dismiss

On a Rule 12(b)(6) motion, the Court must accept "all factual allegations in the

complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Holmes*

*v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted). This

tenet does not apply to legal conclusions, non-factual matter, or "conclusory

statements" set forth in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 -79 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). The Court may also review "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citation omitted); *see Jenkins v. Cnty of Washington*, No. 1:14-CV-0064, 2015 U.S. Dist. LEXIS 113516, *46-47 (N.D.N.Y. Aug. 27, 2015);[2] *Pierce v. Monell*, 2007 WL 2847317, at *5 & n.21 (N.D.N.Y. 2007)("[T]he court may [also] . . . consider . . . . any documents relied on and/or referenced in the complaint (even if those documents are not attached to the complaint, if those documents are provided by defendants in their motion to dismiss)[.]") (citing *Chambers v. Time Warner*, 282 F.3d 147, 153 & n.3 (2d Cir. 2002)).

_____

[2]("The following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are 'integral' to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case." )

**b.  28 U.S.C. §1404(a) motion to transfer venue**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  The movant bears the burden of establishing the propriety of transfer by a clear and convincing showing. *Wilson v. DirectBuy, Inc.*, 821 F. Supp. 2d 510, 513-14 (D. Conn. 2011).  "Among the factors to be considered in determining whether to grant a motion to transfer venue are, *inter alia*: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (internal quotation omitted).   However, there is no strict formula for the application of these factors, and no single factor is determinative. *Ward v. Stewart*, 133 F. Supp. 3d 455, 460 (N.D.N.Y. 2015)(interior quotation marks and citation omitted).  Instead, these factors should be applied and weighed in the context of the individual circumstances of the particular case.  *Id.*   "Section 1404(a) reposes considerable discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Red Bull Associates v. Best Western Int'l*, 862 F.2d 963, 967 (2d Cir.1988) (internal citation omitted).

## IV.    DISCUSSION

### a.  Statutory Fair Use

Plaintiffs bring this suit pursuant to, *inter alia*,  §§ 32 and 43 of the Lanham Act. 15 U.S.C. §§ 1114, 1125.   Section 32(1)(a) of the Lanham Act prohibits any person from "us[ing] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a).  Section 43(a) similarly prohibits any person from "us[ing] in commerce," in connection with any goods or services, "any word, term, name, symbol, or device, or any combination thereof ... which ... is likely to cause confusion, or to cause mistake, or to deceive ... as to the origin, sponsorship, or approval of his or her goods [or] services ... by another person...." 15 U.S.C. § 1125(a)(1).   Plaintiffs contend that they "filed this action to protect their valuable intellectual property and to prevent consumer confusion and dilution that erodes and damages Plaintiffs' reputation and goodwill."  Pl. MOL, p. 1; *see Kelly-Brown v. Winfrey*, 717 F.3d 295, 304-05 (2d Cir. 2013).[3]

_____

[3]("[I]t is helpful as background to observe that the Lanham Act protects marks from two kinds of confusion. It protects against direct confusion, where there is a likelihood that consumers will "believe that the trademark owner sponsors or endorses the use of the challenged mark." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 62 (2d Cir. 2000). It also protects against so-called "reverse confusion," where the consumer will believe "that the junior user is the source of the senior user's goods." *Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 490 (2d Cir.1988). In reverse confusion cases, consumers may believe that the senior user is "an unauthorized infringer, and the [junior user's] use of the mark may in that way injure [the senior user's] reputation and impair its good will." *Id.* )

Defendant does not argue that Plaintiffs fail to adequately allege the elements of an infringement claim, but rather that its use of a cedar tree shape is lawful under the Lanham Act's fair use statute, 15 U.S.C. § 1115(b)(4).  This fair use, Defendant argues, constitutes "a complete defense against federal infringement of a registration mark, federal unfair competition under Sections 32 and 43(a), and federal dilution under Section 43(c) [, as well as against the state law claims.]" Def. MOL, p. 7, *see also id.*, p. 20.[4]  Plaintiffs counter that Defendant is using an infringing tree design as a trademark to indicate the source of Defendant's infringing goods as well as other goods and services offered, marketed, promoted, advertised and sold by Defendant, and thus does not constitute statutory fair use. Pl. MOL, pp. 10-21.

Statutory fair use under the Lanham Act is the use "otherwise than as a mark . . . of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party." 15 U.S.C. § 1115(b)(4).[5]  This defense "permits others to use protected marks in descriptive ways, but not as marks identifying their own products." *Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*,

---

[4]("As fair use is a complete defense against the three federal causes, is a complete defense against the New York state causes as well." (citing *ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008)("The elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law mirror the Lanham Act claims."); *Twentieth Century Fox Film Corp., v. Marvel Enters., Inc.*, 220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002) ("the standards for trademark infringement and dilution under New York common law are essentially the same as under the Lanham Act."))

[5]Statutory fair use is different from "nominative" fair use, which permits in certain non-misleading circumstances a defendant to use the plaintiff's trademark to refer to plaintiff itself or plaintiff's own product. *See Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102 (2d Cir. 2010).

125 F.3d 28, 30 (2d Cir. 1997); *see Kelly-Brown*, 717 F.3d at 308.[6]

Statutory fair use is an affirmative defense on which Defendant bears the burden of establishing each of the following three elements: (1) it uses the cedar tree shape other than as a mark, (2) it uses the cedar tree shape descriptively, and (3) it uses the cedar tree shape in good faith. *See Kelly-Brown*, 717 F.3d at 308. In rebutting Defendant's fair use arguments on this Rule 12(b)(6) motion, Plaintiffs "are held only to the usual burden of a motion to dismiss . . . which is to say they must plead sufficient facts to plausibly suggest that they are entitled to relief." *Id.*

"Because fair use is an affirmative defense, it often requires consideration of facts outside of the complaint and thus is inappropriate to resolve on a motion to dismiss." *Id.; see A.V.E.L.A., Inc. v. Estate of Marilyn Monroe*, 131 F. Supp. 3d 196, 210 (S.D.N.Y. Sept. 18, 2015);[7] *see also Frye v. Lagerstrom*, 2016 WL 3023324, at \*4 (S.D.N.Y. May 24, 2016).[5] While affirmative defenses may be adjudicated on Rule 12(b)(6) motions where the facts necessary to establish the defense are evident on the face of the complaint, *Kelly-Brown*, 717 F.3d at 308; *see Capitol Records, Inc. v.*

---

[6]("[T]he owner's rights in a mark extend only to its significance as an identifying source, not to the original descriptive meanings of a mark, and so where another person uses the words constituting that mark in a purely descriptive sense, this use may qualify as permissible fair use.")(internal quotation marks and citation omitted)

[7]("According to X One X, the use of the word Marilyn is descriptive, and thus the fair use doctrine precludes the Monroe Estate's trademark infringement claim. However, this argument is misdirected, as the invocation of the fair use doctrine necessarily raises questions of fact that cannot be resolved on a motion to dismiss.")

[5](affirmative defenses that rely on facts outside the complaint are not appropriate for resolution on a Rule 12(b)(6) motion)

*MP3tunes, LLC*, 2009 WL 3364036, at *3 (S.D.N.Y. Oct. 16, 2009),[6] the motion must be denied where the allegations in the complaint are insufficient to establish the defense.

### 1. Defendant uses the cedar tree shape other than as a mark

In determining the first fair use element, whether the cedar tree shape was used other than a mark, the Court must make a "detailed determination of the particular manner in which the mark was used." *Kelly-Brown*, 717 F.3d at 306. A defendant uses a challenged design as a mark for purposes of statutory fair use when it attempts to create an association with consumers between itself and the challenged design. *See id.,* at 308. The Court asks whether the defendant uses the mark "as a symbol to attract public attention," examining factors such as the size, stylization, placement, consistency, frequency and nature of the uses of the design. *Id.* at 306 (citing *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 400 (2d Cir. 2009)); *see also* J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:46 (4th ed. 2015). Because statutory fair use focuses on the defendant's good faith intent and actions, the proper inquiry on the first factor is whether the defendant is "*attempting* to build an association with consumers" between the allegedly infringing design and the defendant. *Kelly-Brown*, 717 F.3d at 308 (emphasis added).

Accepting the allegations contained in the Complaint as true, the Court must conclude that Defendant uses the cedar tree shape, at least in part, as a mark to attract public attention. Defendant's cedar tree shape symbol is used prominently across

---

[6] ("While a complaint can be dismissed for failure to state a claim pursuant to a Rule 12(b)(6) motion raising an affirmative defense if the defense appears on the face of the complaint, the complaint itself must establish the facts necessary to sustain defendant's defense.")(internal quotation marks, brackets, and citations omitted)

multiple advertising platforms, such as Defendant's website and social media accounts; is used on Defendant's POS displays; is used in Defendant's employment recruitment efforts; and is central to and surrounds nearly every aspect of Defendant's marketing efforts. Drawing reasonable inferences in Plaintiffs' favor, a reasonable fact finder could conclude that Defendant is attempting to create an association with consumers between itself and the challenged design.

Although Defendant's air fresheners have the word "Sun" written on them on the base of the cedar tree shape,[7] consumers not familiar with Defendant's name might fail to attribute a source indicative meaning to the use of the script "Sun," a term with ordinary meaning. Moreover, the word "Sun" does not appear on Defendant's use of the cedar tree shape used in connection with its Twitter and Instagram social media profile picture logos, POS displays, and other marketing and sales materials.

On this motion, it is difficult if not impossible to weigh such factors as the size, placement, consistency, frequency and nature of the uses of the challenged design. Based on the allegations in the Complaint - particularly the allegation that Defendant uses of the cedar tree shape without the word "Sun" in instances such as its Twitter and Facebook profile pictures and in its POS displays,[8] Plaintiffs have pled sufficient facts to

---

[7]Plaintiffs argue that the term is written in a script that is much less prominent than the tree design itself and not prominently displayed on the product.

[8]The Court has considered Defendant's uncropped version of Defendant's POS display picture depicted in paragraph 34 of the Complaint. While both versions of the picture depict Defendant's air fresheners hanging in clear packages presumably bearing the word "Sun" (the picture's quality is not sufficient to make out the lettering), and while the uncropped picture shows Defendant's founder Shine Adams seated at a table containing Defendant's other products and literature, both show air fresheners hanging from a cedar tree shape that contains no writing and that is nearly identical in shape to Plaintiffs' Tree Design Marks.

plausibly suggest that Defendant is attempting to build an association with consumers between the allegedly infringing design and itself.  Thus, Defendant fails to meet its burden on the first element of the statutory fair use test.

### 2.  Defendant uses the cedar tree shape only descriptively

Statutory fair use also requires that the challenged design be "used . . . *only* to describe the goods or services of" the defendant. 15 U.S.C. § 1115(b)(4)(emphasis added).  Although designs can serve both descriptive and source indicative functions, *see* J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 15:6 (4th ed. 2015), the use of a design other than descriptively defeats statutory fair use. *See Kelly-Brown*, 717 F.3d at 308.[9]

"Whether [a] mark is classed as descriptive (and thus ineligible for protection without secondary meaning) depends on the relationship between the mark and the product described."  *Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 269 (2d Cir. 1995).  "Thus words like SWEET or CHEWY would be descriptive for a candy, but would be suggestive, or even arbitrary or fanciful, if used in connection with bed sheets, a computer, or an automobile." *Id.*  "[F]air use permits others to use a protected mark to describe aspects of their own goods, provided the use is in good faith and not as a mark." *Id.,* at 270.

While Defendant, like the defendant in *Car-Freshner Corp.,* surely uses the cedar tree shape to refer to the pine scent of its air fresheners, *see Car-Freshner Corp.*

---

[9]("[T]he owner's rights in a mark extend only to its significance as an identifying source, not to the original descriptive meanings of a mark, and so where another person uses the words constituting that mark in a *purely descriptive sense*, this use may qualify as permissible fair use.")(emphasis added)

*v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 270 (2d Cir. 1995); *see also Cosmetically*

*Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997),[10]

Plaintiffs present a plausible allegation that Defendant uses the cedar tree shape  - a

design nearly identical to Plaintiffs' long-established mark - as its own mark to indicate

the source of its products, some of which (car air fresheners & t-shirts) are the same as

Plaintiffs' products.   Accordingly, Defendant fails to meet its burden on the second

element of the statutory fair use test.  *See Kelly-Brown*, 717 F.3d at 312.[11]

### 3.  Defendant uses the cedar tree shape in good faith

The third element is whether the defendant uses the design in question in good

faith.  "The good faith requirement has not been litigated frequently[,] [but c]ourts and

commentators who have considered the question equate a lack of good faith with the

subsequent user's intent to trade on the good will of the trademark holder by creating

confusion as to source or sponsorship." *EMI Catalogue P'ship v. Hill, Holliday, Connors,*

*Cosmopulos Inc.*, 228 F.3d 56, 66 (2d Cir. 2000)(citation omitted).   While a party that

lawfully uses a design does so in good faith, *see Car-Freshner Corp. v. S.C. Johnson &*

*Son, Inc.*, 70 F.3d 267, 270 (2d Cir. 1995),[12] "a plaintiff may . . . show absence of good

---

[10] (In *Car-Freshner*, though the image of a pine-tree shape communicated an aspect of the product, its pine scent, use of the image was also approved because the image referred to the Christmas season in which the product was sold. *See id.* at 270. This description (by the suggestive use of the image) of the period in which the product was sold was deemed to be a 'description of the goods' within the meaning of the fair use defense.")

[11] ("It is the defendants' burden here to show that their use of the phrase 'Own Your Power' was descriptive. At this stage in the litigation, defendants have not made that showing.")

[12] ("Johnson was fully entitled to use a pine-tree shape descriptively notwithstanding Car-Freshener's use of a tree shape as a mark, the fact that it did so without consulting

faith where a junior user had knowledge or constructive knowledge of the senior user's mark and chose to adopt a similar mark." *Kelly-Brown*, 717 F.3d at 313.

Plaintiffs assert that they contacted Defendant on multiple occasions of their rights in the Tree Design Marks and Defendant's violation of those rights, but Defendant willfully disregarded those rights and continued to use the allegedly infringing tree design. Compl. ¶ 48.   At this stage of the litigation, Defendant has not established its lawful use of the cedar tree design.  Further, Plaintiffs have presented a plausible claim that, by adopting a cedar tree design nearly identical to Plaintiffs' Tree Design Marks, Defendant intended to trade on the good will of the trademark holder by creating confusion as to source or sponsorship.  Thus, Defendant fails to establish the third element of the statutory fair use test.

Accordingly, Defendant's motion based upon the statutory fair use defense is denied.

### b.  First Amendment

Defendant also contends that the action must be dismissed because it sells tree shaped ornaments that serve as symbols of Sun's founder's mission to employ recovering alcoholics, recovering drug addicts, and former convicts.  Def. Mem. L. pp. 1, 19.  Defendant provides an exhibit that displays a tree "bearing different decorations," and argues that in Sun's founder's full interview referenced in part in

---

counsel has no tendency to show bad faith.")(citing *United States Shoe Corp. v. Brown Group, Inc.*, 740 F. Supp. 196, 199 n. 3  (S.D.N.Y.1990)(defendant's knowledge of plaintiff's success with mark is insufficient to show bad faith); Restatement (Third) of Unfair Competition § 28 cmt. d (1995) (describing examples of bad faith)).

paragraph 47 of the Complaint,[13] he stated that he wanted the trees to be the symbol of

"the discouraged worker" and the "symbol of a new life."  Def. Reply MOL, p. 9.

Defendant argues that "[i]t is not relevant whether [the tree ornaments] are artistically

profound or not: Sun's trees are clearly artistic objects whose expression comprises

protected First Amendment speech."  Def. MOL., p. 19.

In *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir.1989), the Second Circuit instructed

that "courts must construe the Lanham Act narrowly where necessary to avoid conflict

with the First Amendment right to artistic expression." *Beastie Boys v. Monster Energy*

*Co.*, 66 F. Supp. 3d 424, 447-48 (S.D.N.Y. 2014)(citing *Rogers*, 875 F.2d at 998).

However, *Rogers* also instructed that courts are to construe the Lanham Act "to apply to

artistic works only where the public interest in avoiding consumer confusion outweighs

the public interest in free expression." *Rogers,* 875 F.2d at 999.

While the Court may examine documents that Plaintiffs either possessed or

knew about and upon which they relied in bringing this suit, the Court declines to

engage in a *Rogers* balancing test on the instant motion. *See Car-Freshner Corp. v.*

*Getty Images, Inc.*, 822 F. Supp. 2d 167, 176 n. 14  (N.D.N.Y. 2011).[14]  Thus,

_____

[13]("47. On information and belief, Sun Cedar adopted the Infringing Tree Design for
its Infringing Air Fresheners to be a substitute for and direct competitor with Plaintiffs'
famous hanging air freshener products. Sun Cedar's founder, Shine Adams, admitted in
radio interview that he conceived of his abstract tree-shaped Infringing Air Fresheners
after he "had just bought a car and I really wanted something to hang from the rearview
mirror, but didn't want to hang a piece of cardboard that was scented," undoubtedly
referring to Plaintiffs' Tree Design Marks and LITTLE TREES Air Fresheners.

[14]("At this stage of the proceeding, the Court declines to apply the *Rogers* balancing
test . . .  which requires courts to construe the Lanham Act "to apply to artistic works only
where the public interest in avoiding consumer confusion outweighs the public interest in
free expression.")(citing *World Championship Wrestling v. Titan Sports, Inc.*, 46 F.Supp.2d
118, 123 (D. Conn.1999) (declining to apply the Rogers balancing test, noting that the test

Defendant's motion on this ground is denied.

### c.  Motion to Transfer Venue

A defendant seeking to transfer for alleged convenience under 28 U.S.C. § 1404(a) must proffer "detailed" affidavits and other tangible proof "relevant to the factors to be considered by the court in its transfer decision, including the potential principal witnesses expected to be called and a general statement of the substance of their testimony." *Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998). This is especially so where, as here, Defendant is suggesting "inadequate means." *See Federman Assocs. v. Paradigm Medical Indus., Inc.*, 1997 U.S. Dist. LEXIS 23685, at *12 (S.D.N.Y. Apr. 8, 1997) ("[a] party arguing against or for transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances").

Defendant's motion to transfer venue must be denied because it has not proffered an affidavit or other evidence pertinent to any of the relevant convenience factors, including its alleged inadequate means or who the relevant witnesses will be and the nature of their testimony.  *See Peterman v. United States*, 2006 U.S. Dist. LEXIS 70407, at *7-8 (N.D.N.Y. Sept. 28, 2006) (denying transfer motion unsupported by affidavit).

## V.    CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss the action

---

"involves factual and legal issues which cannot be disposed of at [the pleading] stage [of] the case"); *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 584 (2d Cir.1990) (noting that "[n]ormally, the likelihood of confusion is a factual question" [citing Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir.1981) ] ."))

pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, to transfer the action to the District of Kansas pursuant to 28 U.S.C. § 1404(a) [Dkt. # 8], is DENIED.

**IT IS SO ORDERED.**

**Dated:**  July 13, 2016

Thomas J. McAvoy
Senior, U.S. District Judge